My name is Sharon Nelson and I represent the appellants in this case. I first want to thank the panel for giving me the opportunity to argue in this forum. I believe that the Ninth Circuit arguments are not nerve-wracking enough, so when you bring in 200 to 300 strangers to critique my work, that makes my job so much more pleasurable. So thank you for that opportunity. With that being said, I'd like to focus on the issue that— We're deliberately accused of not being interactive enough. I think this fits the bill. With that being said, I'd like to focus on our issues that we took, specifically with the district court's finding that we did not demonstrate pretext at the lower court level with respect to an ADA claim. As this court is aware from the Godwin decision, we can establish pretext in cases involving ADA disability discrimination claims by showing direct evidence of discriminatory motive. And when we do that, that does create a triable issue, even if the evidence we show is not substantial. While we believe the evidence did rise to the level of being substantial in this case, we nonetheless took issue with the court's finding that pretext was not established in the slightest. The reason that we took issue with that determination by the lower court was because we had a declaration from the labor relations manager, Mike Snyder, in the case at ROA 00136. And in that declaration, Mr. Snyder indicated that our client was, in fact, for the incidents of October 10th and October 11th by giving a 120-hour suspension. That is the sum total of the discipline that was to be mated out to our client. But what happened thereafter was we had a transfer that was forced upon our client that we believe was punitive in nature. We also had the difficulty with our client being precluded from the promotional process. And we believe that those two incidents demonstrate pretext because they couldn't have been a form of discipline. And if I could interrupt you for a moment, I was just looking for evidence in the record that was indicating that the disparate treatment under the ADA that you were claiming was based on William's status as an alcoholic rather than because of his misconduct. And I know you pointed at some of these things saying, well, he was treated more harshly, but I didn't see you identify similarly situated people. So that made it harder for me to understand where the evidence was that what was at issue was his status, which is what you would have to show for your ADA claim. And I appreciate that, Your Honor. There was some evidence of disparate treatment in terms of other officers who had been involved in much more egregious conduct. And those documents were all submitted under seal to the district court. But what we were arguing with respect to the pretext with our client was that he was the only one that was ever denied the promotional process. He was the only one that was given a transfer as a result of this. And we had admissions from the individuals engaging in the transfer that it was because of the alcohol-related incident. So the misconduct as opposed to the status, that was my problem. I was looking for evidence pointing to, well, he's an alcoholic, not that he drove the police vehicle while he was under the influence or after he had been drinking. And, unfortunately, we don't have the lecture of a direct admission from the defendant or the appellee in this case indicating it was specifically because he was an alcoholic. But what we do have is comments from them in the record that indicate that it was because of the incident where he relapsed. I thought it was because of the cover-up. I apologize? I thought it was because of the cover-up. Because he lied when asked. He didn't disclose that he had been out there drinking with his colleague who got into a hit-and-run. No, that was actually the result of the 120-hour suspension. That 120-hour suspension, according to... What is it that you're referring to? I thought the reason he was told he couldn't be a captain was because he lied. No, not at all. The reason he was told he couldn't be a captain was because of the 120-hour suspension. He's the only one in the history of the department that has ever been given that directive when he attempted to apply for the position of captain. But, I mean, he had two charges. One was conduct unbecoming, which included the incident that the chief judge is referring to, that he wasn't forthcoming in explaining where Pagano was. So that was clearly part of the charges against him for which he was disciplined and ultimately not allowed to participate in the promotion practice. It clearly was. But what the defendant or what the appellee in this case argued at the motion for summary judgment stage was that the 120-hour suspension that he received was a cumulative disciplinary action taken against him as a result of all three of those incidents. And the declaration from Mr. Snyder supports that. He does not indicate in his declaration that the failure to participate in the captain's promotional process was a result of that, nor does he indicate that the decision that our clients had to be transferred was a result of that misconduct either. So if we have a direct admission from the employer that there's a specific delineated form of discipline that encompasses all three incidents for which they're disciplining, and thereafter they take steps beyond that that are punitive in nature. You seem to take the view that once there's punishment for certain conduct, the conduct disappears. But that's not how we operate the criminal law or anything else. Somebody serves his time for felony, but the next time he commits a felony, it counts against him that he's a true crime felon. And in the case of your client, he was disciplined twice or three times, wasn't it, for various forms of conduct, including covering up for a follow-on point. Wouldn't the department be derelict in its responsibilities if it ignored all of that and decided to make this guy captain and then he got in this position, and somebody under his direction gets killed or some citizen gets mistreated because he was incompetent, and then they get sued because, look who made a captain, a guy who's been disciplined three times for incidents involving drunkenness and lying and all that? There is no dereliction of duty on the part of the department in this case in terms of the discipline they needed out. It's a 120-hour session. But then you want them to say it's forgotten. It's like it never happened. That's not how discipline works. Discipline is not forgotten. It doesn't disappear once the punishment has been served. There are collateral consequences, and everybody understands that's the case. It's the case in the criminal law. It's the case in life itself. It's not that it has to be forgotten, Your Honor. It's that if a course of discipline is chosen and implemented by a department, it needs to be followed and nothing else needs to be done. It is followed, and then we say, okay, but we're not going to punish you because people who get punished for this kind of conduct are not deserving of the honor and responsibility of becoming a captain. So punishment goes to the possibility of having these infractions, consequence they would be crazy not to take into account. I disagree, Your Honor, because if, in fact, the issue with the promotional process and the punitive transfer were related to the incidents of October 10th and 11th, then, in fact, they should have been included in the disciplinary record. Why not? Where do you get that? He gets punished for misconduct. The misconduct is he's doing it. And then they look at his situation and say, okay, this is a guy who's in a program where he has to be on call 24 hours a day. It doesn't do us any good to have a guy on call 24 hours a day who knocks back a dozen drinks within an hour while he is on call. This is just not the kind of person we want available. What we want available are people who are more moderate in their drinking or perhaps people who don't drink at all. That's certainly how I would run a police detective, and if I were looking for people to be on 24-hour call, why isn't that something that rationally can be counted against him, that he goes around drinking, not just drinking, but drinking to extreme excess? What good is he in that program if he can't be called up and be sober? Well, obviously, Your Honor, he was very good at his job because he received a positive performance evaluation and had a clean record up to this point. So what good is he? I believe that he was certainly able to perform his job duties, and the record demonstrates that. But essentially what this court is saying, if I understand correctly, is it's very similar to putting a child in time-out because they have misbehaved. And when they come out of time-out, the next two months we get to say, well, you had this problem two months ago, and we're going to continue to discipline you over the course of time. And that is not what this was about. Surely they're not employed. This is an employment. This is something where she gets money. This is something for which you are sent out there carrying a gun and a badge among the citizens, and you have to make decisions that are life-and-death decisions. This is not a child in kindergarten. There has to be some checks and balances, however, if he's being informed that there's a 120-hour suspension, and that is the sum total of his discipline by the defendant's own admission, for them to continue thereafter. I see your argument, as I understand it, is that they told him what the discipline would be. He was disciplined. He served it. And then when he went into promotion, they said, look, because of your record, we're not going to allow you to participate in this promotion practice. And it seems like they added on something on top of the discipline he already got. And so you argue whether that was rational or not, or whether there was an ulterior motive. I guess because it seems to, as the Chief was saying, rational to say somebody who has had these violations may not be the best person to be promoted, whether you agree or disagree that that's a good thing, it's just hard to see how that raises an inference that they were intentionally discriminating against him or they were treating him differently because he was an alcoholic rather than because he had been with these three charges. I guess that's where I started with. And I think your response was either you make the inference or you don't. There's no other evidence in the record. Is that right? Well, there's evidence in the record that he was the only one that was ever barred from proceeding through the promotional process, despite other employees who did have a disciplinary record. And we had an internal email to that effect that admitted he was the only one that was ever barred from that promotional process. There's also evidence in the record that he was forced into a transfer because his supervisor specifically said it was a result of him saying at one point I'm an alcoholic and then a year later he goes out and drinks. And so those comments and the evidence that we found in the record, we believe support the fact that this wasn't about discipline. He'd already been given 120 hours. This was, in fact, about his alcoholism and the fact that he relapsed into that disease. And I see I only have three minutes left, so I'd like to reserve my time if I could. There you are. Thank you. We'll hear from the opposing counsel. May it please the Court. Craig Anderson on behalf of the Las Vegas Metropolitan Police Department. Carrying on with the theme that has been set up here, the point that's very critical here is that when Ron Williams was placed in the special events unit in 2002, it was known he was a self-diagnosed alcoholic. He told them that. Despite that condition, they allowed him to transfer into this position, which includes a take-home car and 24-hour on-call. It was only after he showed that he was willing to drink and drive that vehicle on two separate occasions that they took him out. And so now we talk about a punitive transfer. He didn't change his rank. He didn't lose his pay. He didn't lose anything except the take-home car. But were there comments made that the reason he was being transferred was because he was an alcoholic? Absolutely not. The only comments they're relying upon are by Captains Canedo and Fruge, who stated that because of his maturity and stability they were transferring him. They're saying that the stability and maturity is a direct statement towards his alcoholism. What that's a statement towards is someone who's in a position of supervision who's willing to drink and drive while on-call and then cover it up, being on forthright afterwards. They're trying to make a nexus between the stability argument and the alcoholism, but there was never any comment on his alcoholism. They essentially had to transfer him out of the position because he has a take-home car. And he was driving that car when he drank alcohol twice. And I don't want to be here in two more years when they put him back on the force of that car trying to say that it wasn't negligent supervision of him. So that was the reason for the transfer. It wasn't punitive. He didn't lose rank. He didn't lose pay. With respect to the Captain promotion, there are other points that he wasn't allowed to participate. Everyone who takes that test has to fill out their prior discipline. He's just the one with the worst. So it did stop him. I think they said that, or his claim was this is the first time they ever had that requirement for promotion. It had been on previous, and Mike Snyder in his affidavit said discipline has always been a factor in determining when to promote somebody. Ron Williams was just the first person with a major suspension on his record that applied for Captain. Now, with the major suspension, Metro was entitled to fire him under their own guidelines. Any act that an employee does that brings discredit upon the department, which obviously drinking in a department vehicle, which is what the other cases they say are different, none of these people, well, let me back up. No lieutenants in a company vehicle were driving drunk twice or driving under alcohol on two occasions and then covering up. Now, I think it's common sense to say that could bring discredit upon the department, and under the collective bargaining agreement and the managing handbooks in play here, they were allowed to terminate for that. They chose not to and just suspended him for the 120 hours, which was reduced to 80. Do you want me to address either the equal protection or due process claims? I think we're fine. Thank you. Okay. Thank you, Your Honors. Okay. We have two minutes for rebuttal. Thank you, Your Honor. In fact, there are direct comments in the record about the transfer being directed as a result of the drinking. The record on appeal at 00270, Captain Tonito, who was his supervising captain, admits that he supported the transfer of my client in part because of his past admission that, quote, and then less than a year later, through his own admission, he went out and drank. Tonito also maintained in the record that because of the relapse, he could no longer trust him to fulfill his work obligations, and that was supported by Frug, who was the supervisor of Tonito, who immediately joined in that decision to transfer Mr. Williams after the events of October 10th and 11th because he needed someone that we could depend on. I don't understand. Where is the smoking gun there? I don't have the luxury of a smoking gun, but I do have the luxury of a smoking gun. Where is the gun at all? I don't see it. What they're saying is it's not that he's an alcoholic, it's that he drinks. There are alcoholics who don't drink, and there are people who are suffering from alcoholism who don't drink. That's the whole idea behind Alcoholics Anonymous. It's understandable that you have support groups that keep drinking, and the idea is you're always an alcoholic, you're an alcoholic for the rest of your life, and if you ever touch a drink, you're going to go back to, you know. It sounds like what they're saying is it's fine that he's an alcoholic. The problem is he drinks. He goes back to drinking. Why is that distinction quite clear from what they're saying? Because that's not what the record supports, Your Honor. You just read me what the record says. They had issues from the very beginning with the alcoholism and addressed those issues with him when they first placed him in the position of special events. But when they specifically say he goes back and starts drinking, not just drinking, but, you know, drinking like a sailor, I mean, no, I mean, this is serious. I understand. I understand, but when you're specifically using words like relapse, relapse, or by your own admission you stopped drinking a year ago and now you're drinking again and now I just can't trust you, that type of behavior, it just goes in this direction. Because you're always going to be an alcoholic. You're an alcoholic. There's no relapse. There's no sort of going back or stop being an alcoholic and now I'm back to being an alcoholic. You're always an alcoholic. All that can relapse is behavior, but behavior is actual drinking. Not just drinking, but binge drinking. Binge drinking while you're out with a buddy who gets into a car crash while you're driving a police car. What if you killed somebody on his way home from the bar? You know, would counsel be here representing the police department in the tort lawsuit? Not for me, Your Honor, but he very well could be with someone else. He was very important, I guess. The point is that the discipline was 120 hours and this went far above and beyond the discipline. And the other thing I want to touch on real quickly with my four seconds is that the record on appeal at 356 specifically identifies our client as the only person who was not allowed to participate in the promotional process as a result. Was there anybody with a severe disciplinary record who was treated better? Your Honor, we don't know. This has never been a policy that's been enforced prior to our client. But you didn't come up with somebody and say, look, he was treated badly. He was denied promotion. Here's somebody who had an equally serious or worse disciplinary record, and they promoted him anyway. There's been a number of people that engaged in more egregious conduct that were disciplined at a less severe level, but none that applied for the promotional position of captain. Okay. Thank you. Thank you very much. Please just argue your stance a minute.
judges: O'connor, Kozinski, Ikuta